**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MICKEY DEANGELO MASON,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| v.  ) | Case No. 19-cv-1019-NJR |
| ) | |
| JUSTIN SNELL, ZACHARY FENTON, ) | Hon. Chief Judge Rosenstengel |
| SANDY WALKER, KEVIN HELD, ) | |
| JACQUELINE LASHBROOK, NATHAN ) | **JURY TRIAL DEMANDED** |
| MCCARTHY, ZACHARY FITZGERALD, ) | |
| PHILIP ROYSTER, MORGAN CANNON ) | |
| AND KELLY PIERCE,  ) | |
| ) | |
| Defendants.  ) | |
| ) | |

## FIRST AMENDED COMPLAINT

NOW COMES Plaintiff, Mickey Deangelo Mason, and for his First Amended Complaint

by and through his attorneys, states as follows:

### INTRODUCTION

1.     This is an action brought by Plaintiff Mickey Deangelo Mason ("Mason") to

vindicate profound deprivations of his constitutional rights by Defendants.

2.     Mason is currently incarcerated in Lawrence Correctional Facility but at the times

relevant to this Complaint was incarcerated at Menard Correctional Center in Illinois.

3.     Defendants, acting under color of state law, engaged in a pattern and practice of

retaliation and deliberate indifference against Mason after he exercised his First Amendment

rights when he filed grievances and subsequently filed a lawsuit against a number of the

Defendants.

1

4.      In response to Mason's exercise of protected speech, Defendants, individually and collectively, deprived Mason of his rights in a manner likely to deter further protected speech, including by:  threatening him, denying him access to the law library, writing a false disciplinary ticket against him, placing him in segregation, finding him guilty of that disciplinary ticket, refusing to return his grievances, and repeatedly refusing to address the cold water and smell of Mace in his cell.

5.      Further, when Plaintiff has attempted to assert his rights, there has been a systematic effort to ensure Plaintiff cannot appeal his concerns through the grievance process, as Defendants refused to return grievances to him either in a timely manner or at all.

6.      This pattern and practice of retaliation and deliberate indifference toward Mason's conditions of confinement violate Plaintiff's First and Eighth Amendment rights.  Further, Defendants are in violation of 42 U.S.C. § 1983 because they acted under color of state law.

**JURISDICTION AND VENUE**

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under the Constitution and the laws of the United States, including the First and Eighth Amendments of the United States Constitution, and 42 U.S.C. § 1983.

8.      This Court has personal jurisdiction over all Defendants because the acts and omission of the Defendants from which this action arises occurred within the State of Illinois.

9.      Venue in this district is proper under 28 U.S.C. § 1391(b)(1) and (2) because Defendants are located within this district, and the events or omissions giving rise to the claim occurred within this district.

**PARTIES**

10.     At all relevant times, Plaintiff Mickey Deangelo Mason was a resident in the State of Illinois, a citizen of the United States of America, and was incarcerated at Menard Correctional Center within the Southern District Illinois.

11.     At all relevant times, Defendant Sergeant Justin Snell was a correctional officer at Menard Correctional Center.  Sergeant Justin Snell is being sued in his individual capacity.

12.     At all relevant times, Defendant Zachary Fenton was a correctional officer at Menard Correctional Center.  Zachary Fenton is being sued in his individual capacity.

13.     At all relevant times, Defendant Sandy Walker was on the staff on the Adjustment Committee/Hearing Committee for Menard Correctional Center.  Sandy Walker is being sued in her individual capacity.

14.     At all relevant times, Defendant Kevin R. Held was on staff on the Adjustment Committee/Hearing Committee for Menard Correctional Center.  Kevin R. Held is being sued in in his individual capacity.

15.     At all relevant times, Defendant Jacqueline Lashbrook was the Warden of Menard Correctional Center, and was acting under the color of state law.  Jacqueline Lashbrook is being sued in her individual capacity.

16.     At all relevant times, Defendant Nathan McCarthy was on the staff for the Internal Affairs for Menard Correctional Center.  Nathan McCarthy is being sued in his individual capacity.

17.     At all relevant times, Defendant Zachary Fitzgerald was a correctional officer at Menard Correctional Center.  Zachary Fitzgerald is being sued in his individual capacity.

3

18.     At all relevant times, Defendant Philip Royster was a correctional officer at Menard Correctional Center.  Philip Royster is being sued in his individual capacity.

19.     At all relevant times, Defendant Morgan Cannon was a mental health professional at Menard Correctional Center. Morgan Cannon is being sued in her individual capacity.

20.     At all relevant times, Defendant Kelly Pierce was the Grievance Officer of Menard Correctional Center.  Kelly Pierce is being sued in her individual capacity.

### FACTUAL ALLEGATIONS

21.     On or about September 25, 2017, Mason filed a complaint against Menard Internal Affairs staff member Nathan McCarthy, among others, in *Mason v. Unknown*, 17-cv-0125 ("*Unknown*").

22.     On or about October 29, 2018, Mason filed a complaint against Justin Snell, Zachary Fitzgerald, Trenton Freeman, Susan Hill, Josh Miller and Jacqueline Lashbrook.  *Mason v. Freeman*, 18-cv-02029 ("*Freeman*").

23.     On or about November 7, 2018, Defendant McCarthy, also defendant in *Unknown*, threatened Mason by, stating, "You're dead," twice while walking past his cell.

24.     On or about November 7, 2018, Mason filed a grievance (#111-11-10) against Defendant McCarthy concerning his threats.  That grievance was deemed an emergency on November 9, 2018 and denied by the Warden on November 20, 2018.  Mason then appealed the Warden's decision to the Administrative Review Board on December 12, 2018, and the Administrative Review Board denied Mason's appeal on December 28, 2018.

25.     On or about November 8, 2018, Mason made recorded phone calls to his family informing them of McCarthy's threats to Mason's life.

26.     On or about November 9, 2018, Mason was informed by Counselor Ms. Sara Quick that Mason's family had been calling Menard Correctional Center and voicing concerns that Mason's life was threatened by the staff.

27.     On or about November 12, 2018, Mason learned that in response to his family's calls of concern, correctional officers K. Allsup and Cynthia Meyers stated, "I am digging a hole" and, "they are tired of my family calling."

28.     On or about November 12, 2018, Mason submitted an emergency grievance (#219-11-18) concerning correctional officers K. Allsup and Cynthia Meyer's threats to Mason's family. On or about November 16, 2018, Warden Lashbrook deemed the grievance not an emergency, then on or about November 27, 2018, a counselor denied the grievance.  Mason then submitted the grievance to the Grievance Office on or about December 10, 2018.  Plaintiff has yet to receive a response from the Grievance Office.

29.     On or about November 19, 2018, between 10:25 am and 11:05 am, Defendants Justin Snell and Zachary Fenton, while escorting Mason to the law library, stated that Mason could not take his legal papers concerning his criminal and civil cases.  Mason needed these documents to comply with pending court orders.

30.     Mason explained to Defendants Snell and Fenton the importance of his materials to which Defendant Snell stated, "I don't give a fuck, go back to your cell because you're not taking them to law library."  Mason followed his order and went back to his cell.  This interaction is also likely to have been captured on video.

31.     Following Mason's return to his cell, as Defendants Snell and Fenton started to walk away, Mason asked to speak with Lieutenant Juan J. Bernard or Major Robert Hughes about being denied law library and access to the courts.

32.     In response to Mason's request, Defendant Snell pointed his finger at Mason and stated, "You listed me as a defendant."  Mason asked if that was why he was being retaliated against, and again requested to speak with Lieutenant Bernard or Major Hughes.

33.     Defendant Snell then told Defendant Fenton to confiscate Plaintiff's ID card. Despite repeated later requests to Defendant Fenton, Mason was never permitted to speak with Lieutenant Bernard or Major Hughes.  At some point, Defendant Fenton pointed his finger at Mason and told him, "I'm going to send your ass to segregation behind the door."

34.     Shortly thereafter the same day, Defendant Fenton followed up and ordered Mason to pack his property and a shower bag because he was being sent to segregation.  Plaintiff asked Defendant Fenton why he was being sent to segregation and on what charges.  Defendant Fenton responded that Plaintiff was being sent to segregation on Defendant Snell's orders and Defendant Fenton had nothing to do with it.

35.     Defendant Fenton came back around 20 minutes later while Mason packed his shower bag with hygiene items and essentials including: a face towel, bath towel, toothpaste, toothbrush, shower shoes, sheets, blankets, soap, boxers, shirts, and tissue.

36.     While an inmate is typically allowed to bring his essentials with him to segregation, Defendant Fenton told Mason to leave his shower bag at the door, and that a worker will bring it to him in segregation later. This never occurred and Mason went without sheets and basic essentials in segregations for days.

37.     On the way to segregation, Mason was ordered to strip naked in a medical holding area.  At the time Mason was made to strip, female staff walked in and out of the area.  Defendant Fenton then conducted a full cavity search and ordered Plaintiff to touch his private area, bend over and spread his butt cheeks, and then finally put his finger in his mouth.  After Plaintiff was forced to perform these humiliating acts, Defendant Fenton ordered Plaintiff to put his clothes back on.

38.     While still in the holding area, Mason was able to speak to Lieutenant Bernard and explain to him the events of the day, including Defendant Snell angrily telling Plaintiff that he was listed as a defendant in another case prior to ordering him to be sent to segregation, and that the events could be seen taking place on camera.  Lieutenant Bernard responded to Mason, "I don't got time, write a grievance."

39.     Mason was then placed in segregation.  However, despite Defendant Fenton's promise, no one brought Mason his shower bag, leaving Mason without a face towel, bath towel, sheets, blankets, toothbrush, toothpaste, soap, boxers, shirts, shower shoes, and tissue, for nine days.

40.     Furthermore, Mason was placed in a segregation cell with dried blood on the walls and a bed mat stained with blood.  The cell was extremely cold and lacking any heat.  Mason continued to request another cell as well as ask for his shower bag and essentials from officers on the 1st, 2nd, and 3rd shifts.  This went on from November 19, 2018 to November 25, 2018.

41.     On or about the morning of November 20, 2018, Defendant Fenton conducted a gallery count.  Mason stopped Defendant Fenton, informed him about the state of the cell and asked him why he did not receive his sheets, blankets, face towel, bath towel, toothpaste,

toothbrush, soap, shower shoes, shirt, boxers, and tissue. Defendant Fenton responded, "That's what happens when you're a pain in the ass and file lawsuits here at Menard."

42.     Mason then sought out Mental Health professional Morgan Cannon about the condition of the cell and his missing provisions. However, she did not report his concerns and instead filed reports on November 20, 2018 and November 27, 2018 omitting Mason's concerns.

43.     Mason also asked Defendants Fenton and Cannon to speak with a Sergeant, Lieutenant, or Major. Defendant Fenton stated, "Good luck," and left, while Defendant Cannon ignored Plaintiff's request and omitted all of Plaintiff's concerns in her reports.

44.     On or about November 19, 2018, after Mason was placed in segregation, he was written up on two violations by Defendant Snell: intimidation or threats (206) and disobeying a direct order (215). A hearing was scheduled for November 27, 2018.

45.     On or about November 22, 2018 around 11:00 pm, in response to the upcoming hearing, Plaintiff wrote a summary notice that was placed in a sealed envelope and addressed to: Adjustment Committee, Major Robert Hughes, Internal Affairs, Administrative Review Board, Warden Jacqueline Lashbrook, The Director of I.D.O.C., Illinois State Police, and family. Plaintiff never received confirmation that the summary notice was received.

46.     Also on or about November 22, 2018, Plaintiff submitted an emergency grievance (#345-11-18) that detailed his access to the law library and the courts being limited, his encounter with Defendants Snell and Fenton, the condition of his cell in segregation, and his missing personal essentials. The grievance was denied an emergency on November 26, 2018, it was later received by the Grievance Officer on December 18, 2018. Mason has not received a response from the Grievance Officer yet.

47.     On or about November 25, 2018, six days after being placed in segregation, Mason finally received his shower bag containing his hygiene and living essentials.

48.     On or about November 27, 2018, Mason was seen again by Defendant Cannon and Plaintiff expressed to Cannon that there is no heat in the cell, the bed mat and wall have blood on them and asked to be moved to another cell.  Defendant Cannon walked off, without providing a response.  Again, Defendant Cannon did not document Mason's concerns.

49.     On or about November 27, 2018, Mason filed a grievance against Defendant Cannon.  Mason made a copy of the grievance and when he did not obtain a receipt of grievance, he filed a second grievance, exactly mirroring the language of the first, against Defendant Cannon. As of when he brought the original complaint in this matter, Mason had not received any receipt of the grievance.

50.     When Mason was escorted to the Hearing Committee/Adjustment Committee on November 27, 2018, he asked if the committee had received his written summary notice. Defendants Walker, Held, and Bernard, who comprised the Adjustment Committee, stated that they did not receive the written summaries/notices.  Plaintiff then submitted copies to the committee.

51.     Mason then requested that the Adjustment Committee check pertinent camera footage that Mason believed would refute Defendant Snell and Defendant Fenton's false testimony.  Further, Mason asked that his witness Edward Mitchell be called on his behalf.  The Adjustment Committee did not honor either request.

52.     On November 27, 2018, based solely on Defendant Fenton's witness account, the Adjustment Committee hearing found Mason guilty.  However, the panel included Defendant

9

Sandy Walker, who was also a named defendant in a case brought by Mason (*Mason v. Orange Crush Officers* 17-cv-01026), as well as Defendant Kevin R. Held, and Juan J. Bernard.  Mason was made to undergo a two-month C grade status.  As a result of being put on C grade status, Mason was denied phone and email contact with his family, conspicuously soon after Mason alerted his family of threats through phone and email.  Further, likely as a result of the November 19, 2018 violations Mason's otherwise approved transfer to Statesville was withdrawn.

53.    On November 28, 2018, Mason was released from segregation after nine days, six of which without his hygiene and living essentials.

54.    On December 7, 2018 Plaintiff was served the final summary report signed by Warden Jacqueline Lashbrook, which stated that Plaintiff was guilty of the tickets issued on November 19, 2018 by Defendant Snell and corroborated by Defendant Fenton.  This was Mason's first Disciplinary Report since 2011.

55.    On December 20, 2018, Mason filed an emergency grievance (#366-12-18) that was later submitted to the Grievance Office on or about December 31, 2018, along with a two-page Summary Disciplinary Report and Final Summary Report regarding the IDR, False Disciplinary Report, and the Adjustment Committee.  As of when Plaintiff brought the original complaint in this matter, he had not received a response for his grievance.

56.    On or about March 10, 2019 Mason submitted a letter to the Administrative Review Board and Director John Baldwin concerning grievance officers not returning his grievances since October of 2018.  This included Defendant Kelley Pierce, a grievance officer who was also a defendant in another of Mason's matters.  Mason never received a response to his letter or his concerns.

57. Shortly thereafter, on or about March 28, 2019, Mason was relocated to west cellhouse, a classified "high aggression level" cellhouse despite Mason's aggression level being listed as a "moderate" five. This put Mason at risk of being attacked by highly aggressive inmates. Mason was placed in a high aggression level cellhouse in retaliation, as opposed to a good faith effort to maintain or restore security.

58. On May 9, 2019, the cold water in Mason's cell was cut off by staff. Mason notified staff and the 1st shift sergeant that his cold water was off. Defendant Philip Royster ignored Mason's concerns.

59. On May 10, 2019, while Mason was on a legal call, prison staff shook down his cell. Mason's legal documents were thrown away during the shakedown. When Mason requested a shakedown slip from the correctional officer who searched the cell, he responded that he can go in Mason's cell as many times as he wished, and that Mason would not receive a shakedown slip. This was the third time Mason had his cell tossed without receiving a shakedown slip.

60. Still without cold water, on or about the evening of May 17, 2019, Mason told Defendant Zachary Fitzgerald that his cold water was still off. Defendant Fitzgerald responded to Mason by smiling and walking away.

61. On May 22, 2019, while Mason was still housed in the high aggression level cellhouse, Defendant Snell approached Mason on his way to the law library and stated, "You're a snitch bitch," and walked off. Mason then witnessed Defendant Snell identify Plaintiff to the staff on 1st shift in front of inmates as "a snitch," putting Plaintiff at risk of serious harm, and jeopardizing his safety and security from both staff and inmates.

62.     Further, Mason smelled Mace in his cell after Defendant Fitzgerald, who is also a defendant in *Mason v. Freeman* 18-cv-02029, along with Defendant Snell, was placed in west cellhouse 2nd shift.  Mason's cold water remained off the entire time, despite numerous complaints to Defendants Royster and Fitzgerald.

63.     On or about May 22, 2019, Defendant Mason submitted an emergency grievance (#350-5-19) concerning Defendants Snell, Fitzgerald, and Royster for Snell's false announcement that Plaintiff was a snitch and the smell of Mace and the lack of cold water in his cell for over 13 days.

64.     Finally, on May 26, 2019, Mason notified Defendant Royster on 1st shift that his cold water was still off and he responded, "I know."  Defendant Royster then went in the back of Mason's cell in the tunnel and turned the cold water back on around 2:00 pm.

## COUNT I

### Violation of 42 U.S.C. § 1983 and the First Amendment
### by a Pattern and Practice of Retaliation for Mason Filing a Lawsuit Against Them
### (Defendants McCarty, Snell, Fenton, Walker, Held, Lashbrook, Pierce, and Fitzgerald)

65.     Mason repeats and realleges each Paragraph of this Amended Complaint as if set forth fully herein.

66.     Mason is a citizen of the United States and all of the individual Defendants are persons for purposes of 42 U.S.C. § 1983.

67.     All individual Defendants, at all times relevant hereto, were acting under color of state law in their capacity as employees at Menard Correctional Center, and their actions or omissions were within the scope of their official duties or employment.

68.    Pursuant to the First Amendment and 42 U.S.C. § 1983, Mason has a right to engage in protected speech without fear of retaliation by governmental agents and/or actors.

69.    Mason engaged in lawful, constitutionally protected free speech when he named Defendants in civil suits stemming from his treatment at Menard Correctional Center.

70.    In response to Mason's exercise of protected speech, Defendants, individually and collectively, deprived Mason of his rights in a manner likely to deter further protection speech, including by: threatening him, denying him access to the law library, writing a false disciplinary ticket against him, placing him in segregation, finding him guilty of that disciplinary ticket, refusal to return his grievances, and a repeated refusal to address the cold water and smell of Mace in his cell.

71.    On information and belief, Mason's above described exercise of his right to protected speech was a motivating factor in these Defendants' unlawful actions, which were taken in retaliation for Mason's exercise of protected speech.

72.    As a direct and/or proximate result of the Defendants' retaliatory actions, Mason suffered injury and damages.

## COUNT II
### Violation of 42 U.S.C. § 1983 and the Eighth Amendment due to Deliberate Indifference to Mason's Conditions of Confinement while in Segregation (Defendants Fenton and Cannon)

73.    Mason repeats and realleges each Paragraph of this Amended Complaint as if set forth fully herein.

74.    Pursuant to the Eighth Amendment and 42 U.S.C. § 1983, Mason has a right to adequate conditions of confinement.

13

75.    Defendants Fenton and Cannon were deliberately indifferent to Mason's repeated complaints about Mason's conditions of confinement while he was in segregation.

76.    Heat is a basic need for adequate conditions of confinement.

77.    Basic toiletries, hygiene items, sheets and towels are basic needs for adequate conditions of confinement.

78.    A cell and bed free of dried blood of unknown origin is a basic need for adequate conditions of confinement.

79.    On multiple occasions, Defendants Fenton and Cannon deprived Mason of his Eighth Amendment rights by being deliberately indifferent to Mason's requests to remedy the inadequate conditions of confinement.  As a result, Mason spent six days in a cell without heat, basic necessities and with a wall and bed covered in dried blood.  Mason then spent an additional three days without heat in the same hazardous cell.

80.    As a direct and/or proximate result of the Defendants' deliberate indifference, Mason suffered injury and damages.

## COUNT III

### Violation of 42 U.S.C. § 1983 and the Eighth Amendment due to Deliberate Indifference to Mason's Conditions of Confinement in West Cellhouse (Defendants Royster and Fitzgerald)

81.    Mason repeats and realleges each Paragraph of this Amended Complaint as if set forth fully herein.

82.    Pursuant to the Eighth Amendment and 42 U.S.C. § 1983, Mason has a right to adequate conditions of confinement.

14

83.    Defendants Royster and Fitzgerald were deliberately indifferent to Mason's repeated complaints about Mason's conditions of confinement while he was in West Cellhouse.

84.    Mason informed Defendants Royster and Fitzgerald repeatedly that his cell's cold water was not turned back on after being deliberately turned off on May 9, 2019.  It was not until after Mason went without cold water for nearly 20 days that Defendant Royster turned on Mason's cold water on May 27, 2019.

85.    Further, Mason informed Royster and Fitzgerald repeatedly that his cell smelled of Mace, despite no evidence of the use of Mace.  This was never addressed and it caused Mason severe irritation as a result.

86.     As a direct and/or proximate result of the Defendants' deliberate indifference, Mason suffered injury and damages.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

## REQUEST FOR RELIEF

Plaintiff prays that the Court enter judgement in favor of Plaintiff and against each of the

Defendants and grant:

A. Compensatory and consequential damages to compensate Mason in an amount to be

   determined at trial;

B. Punitive damages in an amount to be determined at trial;

C. An award of costs and reasonable attorney fees pursuant to 42 U.S.C. § 1988, including

   expert witness fees, on all claims allowed by law; and

D. Any other relief that this Court deems proper.


Dated:  September 25, 2020                    KING & SPALDING LLP


                                             By:  */s/ Patrick M. Collins*

                                                  Patrick M. Collins

                                             Patrick M. Collins
                                             pcollins@kslaw.com
                                             Matthew T. Wissa
                                             mwissa@kslaw.com
                                             King & Spalding LLP
                                             353 N. Clark Street
                                             12th Floor
                                             Chicago, IL 60654
                                             Phone:  (312) 995-6333


                                             *Attorneys for Plaintiff Mickey Mason*


16

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2020, I filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notification of such filing to the following:

Jennifer Renee Powell, jpowell@atg.state.il.us

Andrew M. Ramage, aramage@bhslaw.com

Anthony Daniel Schuering, aschuering@bhslaw.com

Dated: September 25, 2020                          KING & SPALDING LLP


                                                   By:  /s/ Patrick M. Collins

                                                        Patrick M. Collins

                                                   Patrick M. Collins
                                                   pcollins@kslaw.com
                                                   Matthew T. Wissa
                                                   mwissa@kslaw.com
                                                   King & Spalding LLP
                                                   353 N. Clark Street
                                                   12th Floor
                                                   Chicago, IL 60654
                                                   Phone:  (312) 995-6333


                                                   *Attorneys for Plaintiff Mickey Mason*

17