IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICKEY MASON,<br><br>       Plaintiff,<br><br>v.<br><br>JUSTIN SNELL, ZACHARY FENTON, SANDY WALKER, KEVIN HELD, NATHAN McCARTHY, ZACHARY FITZGERALD, PHILIP ROYSTER, MORGAN CANNON, KELLY PIERCE, and JACQUELINE LASHBROOK,<br><br>       Defendants. | Case No. 19-cv-1019-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

      This matter is before the Court on a Motion for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Defendants Zachary Fenton, Zachary Fitzgerald, Kevin Held, Jacqueline Lashbrook, Kelly Pierce, Philip Royster, Justin Snell, and Sandy Walker's ("IDOC Defendants"). (Doc. 86).[1] Additionally, Defendant Morgan Cannon ("Cannon") filed a Motion for Summary Judgment for Failure to Exhaust Administrative Remedies. (Doc. 92). On September 21, 2021, the Court held an evidentiary hearing on Defendants' motions pursuant to *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). For the reasons set forth below, the IDOC Defendants' Motion for

---

[1] On December 4, 2020, the Court granted Defendant McCarthy's Motion to Withdraw the Affirmative Defense of Failure to Exhaust Administrative Remedies (Doc. 88).

Summary Judgment is granted in part and denied in part. Cannon's Motion for Summary Judgment is denied.

## BACKGROUND

Mason, an inmate of the Illinois Department of Corrections ("IDOC") previously housed at Menard Correctional Center ("Menard"), initiated this action pursuant to 42 U.S.C. § 1983 alleging that the IDOC Defendants and Cannon violated his First Amendment rights, and were deliberately indifferent under the Eighth Amendment to his conditions of confinement while in segregation and at Menard's West Cellhouse. (Docs. 1, 77). After threshold review of his complaint pursuant to 28 U.S.C. § 1915A, Mason was permitted to proceed on the following claims:

| | |
|---|---|
| Count I: | Nathan McCarty, Justin Snell, C/O Fenton, Juan J. Bernard, Sandy Walker, Kevin R. Held, Jacqueline Lashbrook, Kelly Pierce, and Zachery Fitzgerald retaliated against Plaintiff for filing a lawsuit against them in violation of the First Amendment. |
| Count II: | C/O Fenton and M. Cannon were deliberately indifferent under the Eighth Amendment to Plaintiff's conditions of confinement while in segregation. |
| Count III: | Juan J. Bernard, Sandy Walker, and Kevin R. Held violated Plaintiff's due process rights under the Fourteenth Amendment by failing to call witnesses and failing to review Plaintiff's submitted evidence. |
| Count IV: | Philip Royster and Zachery Fitzgerald were deliberately indifferent under the Eighth Amendment to Plaintiff's conditions of confinement in the West cellhouse. |

(Doc. 9).

Thereafter, Mason's counsel amended the complaint, dismissing Count III and Juan J. Bernard. Mason is now proceeding on the following claims:

| | |
|---|---|
| Count I: | Nathan McCarty, Justin Snell, C/O Fenton, Sandy Walker, Kevin R. Held, Jacqueline Lashbrook, Kelly Pierce, and Zachery Fitzgerald retaliated against Plaintiff for filing a lawsuit against them in violation of the First Amendment. |
| Count II: | C/O Fenton and M. Cannon were deliberately indifferent under the Eighth Amendment to Plaintiff's conditions of confinement while in segregation. |
| Count IV: | Philip Royster and Zachery Fitzgerald were deliberately indifferent under the Eighth Amendment to Plaintiff's conditions of confinement in the West cellhouse. |

(Doc. 77).

The IDOC Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies argues that Mason failed to exhaust his administrative remedies prior to filing this lawsuit when he did not "follow the proper steps outlined in the Administrative Code as to those grievances." (Doc. 87); *see* 20 ILL. ADMIN. CODE § 504.800 *et seq*. Cannon's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies argues that "[t]he grievance which [Mason] did appeal to the ARB do not reference Cannon, and the Grievance which [Mason] alleges was not responded to is not sufficiently descriptive to be operative against Cannon." (Doc. 92, p. 1).

## LEGAL STANDARD

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact and the movant is entitled

to judgment as a matter of law. FED. R. CIV. P. 56(a). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

"To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. "[D]ebatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey*, 544 F.3d at 740-41.

*Illinois Administrative Code*

The grievance procedure for inmates of the IDOC is laid out in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, *et seq*. If the inmate's grievance does not involve an emergency, the inmate must first file a grievance with the counselor within 60 days of the discovery of an incident. *Id.* § 504.810(a). The grievance form must contain

factual details regarding what happened, when, where, and the name of each person who involved in the complaint. *Id.* at 504.810(c). While this provision does not preclude an offender from filing a grievance when the names of individuals are not known, he or she must include as much descriptive information about the person as possible. *Id.*

Grievances that are unable to be resolved through the counselor are then sent to the Grievance Officer. *Id.* at § 504.820(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." *Id.* at § 504.830(e). The Chief Administrative Officer then reviews the findings and recommendation of the Grievance Officer and advises the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the response from the Chief Administrative Officer, he or she can file an appeal the decision to the Administrative Review Board. *Id.* at § 504.850(a). The appeal must be received by the Administrative Review Board ("ARB") within 30 days after the date of the decision by the Chief Administrative Officer ("CAO"). *Id.* The ARB then must submit to the Director a written report of its findings and recommendations. *Id.* at § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id.* at § 504.850(e).

## DISCUSSION

**I.     November 7, 2018 Grievance (#111-11-10)**

On November 7, 2018, Mason submitted an emergency grievance that Defendant McCarthy threatened Mason twice while walking past his cell. (Doc. 87-10, p. 2). Also, in the grievance, Mason "contends that there is a systematic problem and/or conspiracy where defendants[:] Warden Jacquline Lashbrook, Orange Crush Officers, c/o Mercer, Mailroom Staff, and Internal Affairs Staff, are intentionally openly conspiring to cause pain, suffering, and legal injury . . . ." (Doc. 87-10, p. 3).

While the IDOC Defendants concede that this grievance served to exhaust Mason's administrative remedies as to Defendant McCarthy, they argue that this grievance "does not attribute any specific actions or inactions related to the claims raised in this case to any named Defendant, other than Defendant McCarthy." (Doc. 87, pp. 11-12). The IDOC Defendants continue noting that "[w]hile Defendant Lashbrook is named in that grievance, [Mason] did not complain of any specific actions or inactions taken by Defendant Lashbrook that relate to the issues raised in this case . . . ." (*Id.*).

The Court disagrees. Mason explained that Defendant Lashbrook was not only acting to conspire, but also Mason—at the evidentiary hearing on September 21, 2021— alleged that Lashbrook ignored prior threats against Mason. Accordingly, Mason has exhausted his administrative remedies as to his claims against Defendant Lashbrook.[2]

---

[2] Defendant Lashbrook allegedly retaliated against Mason because he filed a lawsuit against Lashbrook in violation of the First Amendment. The other lawsuit in which Lashbrook was named was *Mason v. Gimber*, No. 3:17-CV-01025-GCS, 2020 WL 3268654 (S.D. Ill. June 17, 2020).

## II.  March 11, 2019 Grievance (#241-3-19)

Mason filed another grievance on March 11, 2019. (Doc. 1, p. 9). This grievance mentions Pierce, and alleges that Pierce is retaliating against Mason for listing Pierce as a defendant in other cases. (Doc. 93-6). This grievance, however, was filed with the ARB. Mason did not follow the proper grievance process after the ARB returned the grievance on April 3, 2019. (Doc. 87-2; 87-9; p. 44). Accordingly, the Court finds that Mason failed to exhaust his administrative remedies as to his March 11, 2019 grievance.

## III.  Menard Staff's Repeated Delays in Responding to Mason's Grievances

Besides the November 7, 2018 and March 11, 2019 grievances, the staff at Menard repeatedly delayed their responses to Mason's grievances, or even lost his grievances altogether.

### A. November 12, 2018 Grievance (#219-11-18)

On November 12, 2018, Mason filed an emergency grievance. (Doc. 1, p. 7; Doc. 77, p. 5). While this grievance failed to exhaust Mason's administrative remedies to any Defendant as Mason's grieved conduct only mentioned Krista Allsup and Cynthia Meyer, this grievance is just one example of Menard's staff delaying responses to Mason's grievances. (Doc. 1-1, p. 5; Doc. 87-11, p. 3).[3] According to the Menard Grievance Receipt Log, the November 12, 2018 grievance was not returned to Mason until *August 21, 2019* —

---

[3] Illinois statute prescribes that grievances must contain "factual details regarding each aspect of the offender's complaint" including who (or at least descriptive information), what, why, when, and where of the occurrence. 20 ILL. ADMIN. CODE § 504.810(c). Other than mentioning that his family was denied from speaking with Defendant Lashbrook, the November 12, 2018 grievance fails to mention of any IDOC Defendants or Cannon.

approximately eight months after Mason appealed to the grievance officer. (Doc. 87-9, p. 10).

### B. November 22, 2018 Grievance (#345-11-18)

On November 22, 2018, Mason filed an emergency grievance. (Doc. 1, p. 8, Doc. 77, p. 8). Mason's grievance alleged that Defendant Snell had Defendant Fenton take his identification, sent him to segregation, and provided a false disciplinary report. (Doc. 87-12, p. 1-4). The CAO denied it as a non-emergency on November 27, 2018. (*Id.*). Mason refiled, and it was denied on December 10, 2018. (*Id.*). Mason then appealed to the grievance officer on December 19, 2018. (*Id.*). The grievance officer did not review the grievance until *August 27, 2019*—ten days after Mason filed this lawsuit. (*Id.*). This grievance was denied and subsequently returned on *September 5, 2019*. (Doc. 87, pp. 13-14.).

Defendants argue this grievance was not exhausted because it was not properly appealed to the ARB. (*Id.* at p. 14). Unfortunately, however, the grievance officer did not review the grievance until *August 27, 2019*—almost eight months after Mason appealed to the grievance officer. The delay in responding to this grievance prevented Mason from exhausting his remedies. *Dole*, 438 F.3d at 809. Thus, the Court finds that Mason exhausted his administrative remedies as to his claims in Count I against Snell and Fenton, but the November 22, 2018 grievance does not exhaust his claims in Count II against Fenton.

### C. December 20, 2018 Grievance (#366-12-18)

On December 20, 2018, Mason submitted another emergency grievance. (Doc. 1, p. 9; Doc. 77, p. 10). This grievance starts by noting that he is "appealing the decision by [the] Adjustment Committee due to exonerating evidence was presented when Mason informed the Adjustment Committee to check North 2 Camera footage . . . . (Doc. 87-13, p. 1). Mason continues noting that this "exonerating evidence was disregarded by the Adjustment Committee due to North 2 Camera Footage on 11/19/2018 between 10:35 and 10:55 AM will refute the false disciplinary report by Sgt. J Snell in retaliation due to him being a defendant in Case no. 3:18-cv-02029-NJR." (*Id*. at p. 2). The CAO denied it as a non-emergency on December 28, 2018. (*Id*. at p. 1). Mason refiled on December 31, 2018, but Mason allegedly never received a response from the Grievance Counselor. (*Id*.).

The IDOC Defendants argue that the Menard Grievance Receipt Log showed that "the grievance was deemed not to be an emergency and was returned to Plaintiff on May 30, 2019, but Plaintiff never submitted that grievance through the regular grievance process after emergency review was declined." (Doc. 87, p. 14). The IDOC Defendants are looking at the wrong grievance. According to the Menard Grievance Receipt Log and the December 20, 2018 grievance, Mason's grievance was deemed a nonemergency on December 31, 2018, and the CAO did not review and return the grievance until *September 2019*—almost seven months after Mason refiled the grievance. (Doc. 87-9, p. 18). Again, the delay in responding to this grievance prevented Mason from exhausting his remedies. *Dole*, 438 F.3d at 809. Thus, the Court finds that Mason exhausted his administrative remedies as to his claims in Count I against Snell. Mason failed to grieve that the

Adjustment Committee members were conspiring or retaliating against him for filing of a lawsuit against them, however, thus Mason failed to exhaust his administrative remedies as to Defendants Walker and Held.

## IV.     Lost Grievances

When Menard's Staff was not delaying their responses to Mason's grievances, they lost Mason's grievances altogether.

### A. May 22, 2019 Grievance (#350-5-19)

Mason filed an emergency grievance on May 22, 2019. (Doc. 1, p. 10). This grievance mentions Snell, Fitzgerald, and Royster, and that Snell made a false announcement that Mason was a snitch, and that Mason was subjected to the smell of mace and lacked cold water in his cell for over 13 days. (Doc. 77, p. 12, Doc. 1-1, p. 44). Mason allegedly never received a response from his emergency grievance.

If Mason did submit this grievance and never received a response, then his attempts at exhaustion would be deemed thwarted, and he would be allowed to proceed with his lawsuit. *See Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2000) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole*, 438 F.3d at 809 (a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting).

Here, the Court finds Mason's version of the May 22, 2019 grievance to be credible. Mason has shown that he knows how to exhaust his administrative remedies—as he did with the November 7, 2018 grievance. In that grievance, "Mason submitted an emergency

grievance on Day 1; grievance was deemed an emergency on Day 3; the Warden denied the grievance on Day 23; Mason appealed the decision to the ARB on Day 36; the ARB denied the appeal on Day 51." (Doc. 93, p. 12). Further, after the November 7, 2018 grievance, Mason repeatedly advanced grievances after they were deemed nonemergencies.

Because there is evidence of the existence of the grievance, Mason mentioned this grievance in his original complaint, Mason had a history of advancing grievances after they were deemed nonemergencies, and the IDOC's repeated issues in this case regarding the timeliness of responding to Mason, the Court deems that Mason exhausted his administrative remedies as to his claims against Defendant Snell in Count I and Defendants Fitzgerald and Royster in Count IV.

### B. November 20, 2018 and November 27, 2018 Grievances

Mason filed grievances on November 20, 2018 and November 27, 2018. (Doc. 1, p. 8; Doc. 77, p. 9). "Mason made a copy of the grievance and when he did not obtain a receipt of grievance, he filed a second grievance, exactly mirroring the language of the first, against Defendant Cannon." (Doc. 77, p. 9). Again, "Menard made no record of receiving the grievance and Mason never received a response or a receipt regarding these grievances." (Doc. 93, p. 4).

Like Mason's version of the May 22, 2019 grievance, the Court finds Mason's version of what happened to the November 20, 2018 and November 27, 2018 grievances to be credible for the same reasons discussed above. Defendant Cannon, however, also argues that these grievances fail to provide enough notice to her because her name is not

included in the grievances. But Cannon misses the point. "Grievances are intended to give prison officials notice of a problem and a chance to correct it before they are subjected to a lawsuit; grievances are not intended to put an individual defendant on notice of a claim against him." *Moore v. Illiois Dep't of Corr.*, 2021 WL 308805, at *10 (S.D. Ill. Jan. 29, 2021) (citations omitted).

As noted above, the Illinois Administrative Code does not preclude an offender from filing a grievance when the names of individuals are not known. Instead, the offender must include as much descriptive information about the person as possible. 20 ILL. ADMIN. CODE § 504.810(c). Mason did just that when he explained that mental health staff placed him in segregation without sheets, blanket, soap, tissue, boxers, shower shoes, face towel, bath towel, shirts, toothpaste, toothbrush, and he was ignored when he complained about the cell being extremely cold with blood on the mat and wall. (Doc. 1-1, p. 23). While Defendant Cannon notes that "reference to 'mental health staff' [ ] could be anyone from the mental health director at Menard to a BHT, or anyone in between[,]" (Doc. 92, p. 22), this is a merits-based argument inappropriate at the exhaustion stage. Thus, the Court finds that Mason exhausted his administrative remedies as to his claims in Count II against Cannon.

## CONCLUSION

For the reasons stated above, the IDOC Defendants' Motion for Summary Judgment (Doc. 87) is **GRANTED in part and DENIED in part**. The motion is **GRANTED** as to Defendants Kevin Held, Kelly Pierce, and Sandy Walker. The motion is

**DENIED** as to Defendants Zachary Fenton,[4] Zachary Fitzgerald, Jacqueline Lashbrook, Philip Royster, and Justin Snell.

Further, Cannon's Motion for Summary Judgment (Doc. 92) is **DENIED**. This case shall now proceed on Counts I, II, and IV.

**IT IS SO ORDERED.**

DATED:  September 23, 2021

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

---

[4] Count II will only proceed against Defendant Cannon, however, because the November 22, 2018 grievance does not exhaust Mason's claims in Count II against Fenton.