**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MICKEY MASON, | |
| **Plaintiff,** | |
| **v.** | **Case No. 3:19-CV-01019-NJR** |
| JUSTIN SNELL, ZACHARY FENTON, NATHAN MCCARTHY, ZACHARY FITZGERALD, PHILIP ROYSTER, MORGAN CANNON, and JACQUELINE LASHBROOK, | |
| **Defendants.** | |
| ILLINOIS DEPARTMENT OF CORRECTIONS (IDOC), | |
| **Interested Party.** | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Mickey Mason,[1] an inmate of the Illinois Department of Corrections ("IDOC"),[2] proceeds in this case under 42 U.S.C. § 1983 alleging retaliation and deliberate indifference in violation of his First and Eighth Amendment rights. (Doc. 77). Some of the allegations in his Amended Complaint stem from verbal interactions with correctional staff that were potentially captured on video within Menard Correctional Center ("Menard"). Mason was told that the video evidence never existed, but through the discovery process he

---

[1] While Mason is incarcerated and initially filed this action *pro se*, the Court assigned counsel to assist him in this civil rights action on May 20, 2020. (Doc. 67).

[2] For the events underlying the complaint, Mason was incarcerated at Menard Correctional Center. He is currently housed at Hill Correctional Center. *See* https://idoc.illinois.gov/offender/inmatesearch.html (last visited Sept. 25, 2024).

asserts that he has reason to believe the video does or did exist and it is either being withheld or was destroyed. Namely, one of Mason's grievance request denials stated, "Grievance Office reviewed on 11/26/2018 – Contacted IA Supervisor and offender was interviewed and camera footage was reviewed. Allegations made by offender are unsubstantiated." (Doc. 127-3, p. 2). Moreover, testimony from individual defendants verified that cameras existed in the relevant areas and could be viewed and saved. (*See* Docs. 127-9; 127-10).

Mason's counsel attempted to confer with IDOC's counsel but claims he never received a response as to why this relevant material was not retained. As such, Mason issued subpoenas to Menard and IDOC seeking depositions to establish facts regarding the location of cameras near the events at issue in this lawsuit, whether relevant footage ever existed, what happened to such footage, and why. In response, IDOC refused to designate a Rule 30(b)(6) witness to testify about IDOC's video retention policies at the relevant time or steps taken in preserving the footage.

Now pending before the Court is Mason's Motion to Compel IDOC to Produce a Rule 30(b)(6) witness. (Docs. 126; 127). IDOC is a non-party in this case but filed a response in opposition as an interested party. (Doc. 138). Mason characterizes this motion as his last attempt to gain truthful answers regarding what happened to video footage that captured the conduct central to this case. For the reasons discussed below, the motion is granted in part.

## LEGAL STANDARD

"District courts have broad discretion in discovery matters[.]" *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646 (7th Cir. 2001). Under Federal Rule of Civil Procedure 26, discovery is permitted "regarding any nonprivileged matter that is relevant to any party's

claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002). Strong public policy considerations favor the disclosure of relevant materials such that "[b]efore restricting discovery, the court should consider 'the totality of the circumstances, weighing the value of the material sought against the burden of providing it,' and taking into account society's interest in furthering 'the truthseeking function' in the particular case before the court." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (citation omitted).

As it is not literally possible to depose a corporation or entity, Rule 30(b)(6) permits a party to name a business entity as a deponent. *Sanyo Laser Products, Inc. v. Arista Records, Inc.*, 214 F.R.D. 496, 502 (S.D. Ind. 2003). In doing so, the party "must describe with reasonable particularity the matters for examination." FED. R. CIV. P. 30(b)(6). Then, "[t]he named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." *Id.* As with most matters in discovery, "the serving party and the organization must confer in good faith about the matters for examination." *Id.* The designated persons are responsible for testifying "about information known or reasonably available to the organization." *Id.* The limitations to the scope of discovery in Rule 26(b)(1) necessarily concern Rule 30(b)(6) depositions as well.

Under Federal Rule of Civil Procedure 45, "[a] party has a general right to subpoena any person to appear at a deposition or to produce documents for inspection and copying." *Thayer v. Chiczewski*, 257 F.R.D. 466, 469 (N.D. Ill. 2009). Such right is not unlimited, and Rule

45 provides several express protections for individuals subject to subpoena, including somewhat greater protections for non-parties. *Id.* at 469-70; FED. R. CIV. P. 45(d). In determining whether to compel compliance with a subpoena, the court must "balanc[e] the burden of compliance against the benefits of the requested production." *Patterson v. Burge*, No. 03 C 4433, 2005 WL 43240, at *1 (N.D. Ill. Jan. 6, 2005). A court may modify a subpoena that subjects a person to undue burden. FED. R. CIV. P. 45(d)(3)(A)(iv).

## DISCUSSION

As an initial matter, the Court will address the issue of timeliness. IDOC argues that Mason improperly waited one month after the parties faced a disagreement on the scope of discovery and until the day discovery closed to file his motion to compel. The Court notes that Mason filed a motion to extend the discovery deadline shortly before filing his motion to compel, which was unopposed. (Doc. 124). Defendants in this action also filed a motion to stay the dispositive motion deadline until the Court resolved Mason's motion to compel. (Doc. 134).

Courts routinely deny motions to compel as untimely when they are filed after the close of discovery. *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 331, 332 (N.D. Ill. 2005) ("[A] line of sorts has been sketched by a series of decisions: motions to compel filed after the close of discovery are almost always deemed untimely."); *see also Packman*, 267 F.3d at 647. But otherwise, there are no hard and fast rules governing the timeliness of a motion to compel filed *before* the close of discovery. Naturally, "[g]reater uncertainty occurs where the motion is made very close to the discovery cut-off date." *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. at 332.

Here, Defendants did not object to the timeliness of the motion and sought an

extension of time in anticipation for the Court's resolution of the motion. IDOC is not a party in this lawsuit, so its objections as to timeliness strike the Court as odd. In any event, while the motion to compel was filed the day before the discovery cut-off, the impasse between IDOC and Mason occurred just one month prior. This is a relatively short delay from the time of the disagreement. Moreover, trial has yet to be scheduled. Considering these circumstances, the Court declines to deny the motion to compel as untimely.

Moving to the merits of the motion, Mason argues that his outlined deposition topics are relevant and do not constitute improper discovery on discovery. He urges that the potential video footage is of obvious relevance, as it could show acts of retaliation and corroborate his allegations. Further, Mason avers that the deposition topics are narrowly drafted to gather relevant information about IDOC and the IDOC Defendants' duty to preserve relevant evidence. Mason also contends that factual development surrounding the existence of video footage, video retention policies, whether IDOC issued a litigation hold, and whether IDOC staff viewed relevant footage and intentionally deleted it relate to discovery of sanctions or a potential spoliation claim. Furthermore, Mason argues that Defendants' discovery compliance has reasonably been drawn into question, as he has received wavering answers regarding the prior and current existence and availability of the video evidence.

In response, IDOC acknowledges that it is not an entirely disinterested party, as its employees are defendants in the action. But IDOC emphasizes its non-party status is a significant factor in considering the burden imposed by a subpoena. IDOC claims that, in light of its non-party status, the requested discovery is overly burdensome, especially when Mason seeks to delve into matters of discovery on discovery. IDOC states that it would

probably need to designate multiple people to testify about specific facility capabilities five years ago, for which there may be no documentation. Moreover, this task would require reliance on personal, and possibly faded, recollections of capabilities in specific cellhouses or areas of the facility. IDOC also complains that its corporate deponent would be asked to analyze the thought process and state of mind of a former employee responding to one of many subpoenas received by IDOC in the past.

Given the minimal probative value of the requested evidence, IDOC also argues that the undue burden is even more clear. According to IDOC, Mason's allegations generally describe two instances in which Defendants verbally threatened him. IDOC argues that the video footage at Menard does not contain any audio and would be unhelpful in providing clear evidence of the alleged verbal altercations. To the extent Mason seeks this discovery merely to substantiate a motion for discovery sanctions, IDOC urges that discovery on discovery should not be allowed. As to IDOC's purported duty to preserve relevant video footage, IDOC again highlights its non-party status and doubts whether a spoliation claim against a non-party would be viable. Lastly, IDOC invokes concerns of safety and security in its institutions. In particular, exposing the specific locations and areas of coverage for cameras in its facilities could create serious safety and security risks.

Considering the arguments from both Mason and IDOC, the Court finds that the information sought regarding the video evidence is relevant to the underlying claims in the action. Certainly, corroborating video evidence of the interactions between Mason and some of the defendants, even without audio, could strengthen Mason's narrative of the underlying events and show the potentially contentious nature of the alleged interactions. As discovery has revealed that video evidence existed at one time—though it likely does not now—the

Court will permit Mason to obtain clarity about the relevant video evidence and its handling.

Inquiry about the video evidence and its current availability is directly relevant. But as to the preservation and handling of video evidence, as Mason points out, this type of "discovery about discovery" is appropriate under certain circumstances, including when one party's discovery compliance has reasonably been drawn into question creating an adequate factual basis for the inquiry. *In re Caesars Ent. Operating Co., Inc.,* No. 15 B 1145, 2018 WL 2431636, at *13 (Bankr. N.D. Ill. May 29, 2018). Here, discovery has revealed inconsistent answers and evidence regarding the existence of the video evidence and its preservation. The Court acknowledges that typically discovery on discovery is appropriate against a *party* to the litigation. The circumstances here, however, are unique in that IDOC, while a non-party, is certainly interested in this action and maintains access to the video evidence at issue and information regarding its retention.

As such, the Court will permit Mason to proceed with a Rule 30(b)(6) deposition and compel IDOC to produce a deponent. The Court is sensitive to the safety and security concerns raised by IDOC, along with its arguments of undue burden as a non-party. In light of IDOC's concerns, the Court will limit the noticed topics further from those included in Mason's subpoena and notice to IDOC. (Docs. 127-2, pp. 3-4).

First, any reference to subtopics "including, but not limited to" is eliminated, and all subtopics will be limited to those specifically identified. Topic 1 is further limited to whether video cameras recorded video footage or audio in the areas described in subtopic 1a and 1b in November 2018 at Menard. IDOC need not disclose the exact location of any video camera in that area or how the surveillance capabilities have evolved since that time. Subtopics 1d and 2a are further limited in time from November 2018 to September 2021—two years after

Mason initiated this suit. Topic 2 and its subtopics are otherwise sufficiently limited. Topic 3 is limited to only video evidence, rather than recorded telephone calls, as the telephone calls were not addressed in Mason's motion to compel.

CONCLUSION

For the reasons set forth above, the Court **GRANTS in part** Plaintiff Mason's Motion to Compel (Doc. 126) and **COMPELS** the Illinois Department of Corrections to produce a witness for a Rule 30(b)(6) deposition. The deposition topics shall be limited in accordance with this Order. The Court will extend the discovery and dispositive motion deadlines to accommodate such deposition. Discovery is due on or before **December 2, 2024**. Dispositive motions are due on or before **January 2, 2025**.

**IT IS SO ORDERED.**

**DATED:   September 30, 2024**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**