**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **MICKEY MASON,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JUSTIN SNELL,**<br><br>**Defendant.** | **Case No. 3:19-CV-1019-NJR** |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on Plaintiff Mickey Mason's motion for a new trial pursuant to Rule 59 (Doc. 225). For the following reasons, the motion is denied.

## Background

This case arises from Mason's claim that Defendant Justin Snell retaliated against him in violation of the First Amendment during his incarceration at Menard Correctional Center. The underlying facts are straight-forward. On November 19, 2018, Snell, who was at the time a correctional sergeant at Menard, stopped Mason on his way to the prison's law library. He ordered Mason to return to his cell. Mason testified at trial that Snell pointed at him and accused Mason of naming him as a defendant in a lawsuit. Snell then issued Mason a disciplinary ticket, which resulted in Mason being placed in disciplinary segregation and losing other prison privileges. Snell alleged in the ticket that Mason acted in an intimidating manner by yelling and disrupting a line of other inmates. Mason denies that characterization of the interaction.

Mason sued a variety of defendants employed by the Illinois Department of Corrections (IDOC) and Wexford Health Sources, Inc. for their roles in the incident. The Court later recruited counsel to represent him. (Doc. 67). Ultimately, his claims were winnowed to a single First Amendment retaliation claim against Snell. (Doc. 173).

In advance of trial, Mason filed a motion *in limine* seeking leave to present evidence regarding the existence and loss of video camera footage documenting the dispute with Snell. (Doc. 201). Mason stated that he asked several officials at Menard to preserve footage of the incident, but for reasons that remain unclear, no footage was retained. In his motion, Mason did not request an adverse inference jury instruction but "the opportunity to present documented facts surrounding the footage so that the jury may draw its own conclusions from the evidence." (*Id.* at p. 5). He argued that, because the video footage would have corroborated either his account of Mason or Snell's, its absence means "the[ir] credibility . . . becomes all the more probative." (*Id.* at p. 4). Snell objected that evidence related to the non-preservation of the footage would be irrelevant and even if it were relevant, its probative value would be substantially outweighed by the risk of prejudice and confusion, as there was no evidence Snell was aware of Mason's requests for the footage or had access to it. (Doc. 204).

The Court agreed with Snell. In an order issued before trial, the Court held that evidence regarding the (non)preservation of the footage was not relevant to the question of whether Snell retaliated against Mason because he had not "pointed to any evidence that Snell (1) was aware Mason had requested the footage, (2) was responsible for saving the footage, or (3) had access to the footage himself." (Doc. 208, p. 2). The Court also held

that he failed to adequately explain how the evidence would speak to Mason or Snell's credibility. (*Id.*).

At the conclusion of a two-day trial, the jury returned a verdict in favor of Snell, and the Court entered judgment accordingly. (Doc. 223). Mason timely moved for a new trial under Rule 59(a), citing the Court's ruling on the video evidence. (Doc. 225). Snell opposes the motion. (Doc. 232).

## LEGAL STANDARD

Rule 59 of the Federal Rules of Civil Procedure allows the Court to grant a new trial on all or some of the issues, for any reason for which a new trial has been granted in federal court. Fed. R. Civ. P. 59(a)(1)(A). "A new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Bowers v. Dart*, 1 F.4th 513, 521 (7th Cir. 2021). However, a jury verdict "should only be overturned if 'no rational jury' could have rendered it." *Hakim v. Safariland, LLC*, 79 F.4th 861, 868 (7th Cir. 2023); *see also Whitehead v. Bond*, 680 F.3d 919, 928 (7th Cir. 2012) (quoting *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011)) ("A new trial should be granted, however, 'only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the] conscience.'"). Where, as here, the issue turns on an allegedly erroneous exclusion of evidence, a new trial is warranted "only if the error had a substantial and injurious effect or influence on the jury's decision." *Anderson v. Raymond Corp.*, 61 F.4th 505, 508 (7th Cir. 2023); *see also* Fed. R. Civ. P. 61.

## DISCUSSION

Mason asserts that the Court erred by excluding evidence regarding the existence of a security camera on the prison wing where the incident occurred, his timely and repeated requests that the footage be preserved, and IDOC's failure to do so. He says the evidence would have been relevant for multiple purposes. For one, his written requests for the footage would have demonstrated his confidence that it would support his version of events. He also says the footage might have resolved definitively whether Snell did or did not aggressively point at him or whether he was the aggressor, as Snell wrote in his report. Mason further contends that IDOC's failure to preserve the footage "was itself probative." (Doc. 225, p. 7). According to Mason, his inability to present evidence on these issues clearly affected the case because several jurors asked members of his trial team about the existence of video footage after they were discharged, suggesting they would have found the evidence persuasive.

Snell responds that Mason's motion merely rehashes arguments he made before trial that were rejected. He also says Mason is improperly conflating evidence about the *preservation* of the footage, which the Court excluded, with the footage itself, which does not exist. Evidence that the footage was not preserved by IDOC officials despite Mason's timely request might have imputed IDOC's failure to Snell, amounting to an impermissible form of vicarious liability. He admits that several jurors mentioned wishing to footage of the incident but notes that Rule 606 bars consideration of these statements. Snell notes that it was Mason's counsel who opened the door to the jury's curiosities about the video by referring to the footage during trial over his objection,

making it clear that *Mason* wished to discuss the footage but that he did not. Snell adds that some of the jurors expressed that Mason failed to prove he acted with a retaliatory motive, even though they believed he may have acted improperly by issuing the ticket, undercutting the import of the video footage.

To establish that a new trial is warranted, Mason must show that the alleged evidentiary error "had a substantial and injurious effect or influence on the jury's decision." *Anderson*, 61 F.4th at 508. "Evidentiary errors satisfy this standard only when a significant chance exists that they affected the outcome of the trial." *Hall v. Flannery*, 840 F.3d 922, 927 (7th Cir. 2016) (quoting *EEOC v. Mgmt. Hospitality of Racine, Inc.*, 666 F.3d 422, 440 (7th Cir. 2012)). The Court concludes that Mason has not met that burden.

It is true that during the Court's standard, post-trial meeting with the jury, several jurors expressed curiosity regarding the footage of the incident. Apparently, some of the jurors later raised similar questions with counsel. Of course, the parties have not attached any evidence documenting these conversations other than the statements in their briefs. Even if they had, the Court could not consider such evidence. *See* Fed. R. Evid. 606(b); *United States v. Eiland*, 161 F.4th 494, 505 (7th Cir. 2025) (holding that a juror's post-trial speculation on why a defendant did not testify was not admissible in support of his motion for a new trial). Of course, Mason appears to be using the juror remarks for *illustrative* purposes, to demonstrate that "an average juror would have found the omitted evidence persuasive." (Doc. 225, p. 7 (quoting *Burton v. City of Zion*, 901 F.3d 772, 776 (7th Cir. 2018))). Even accepting that distinction, however, the Court is not persuaded.

Mason suggests three ways the video evidence would have been relevant to his case: (1) his repeated, contemporaneous requests for review and preservation of the footage would demonstrate that he was confident it would support his version of events, bolstering his credibility, (2) the footage would resolve whether Snell or Mason's version of events surrounding their encounter was accurate, and (3) IDOC's failure to preserve the footage was itself probative about "what it meant that the entity with custody of potentially corroborative evidence allowed it to be overwritten." (Doc. 225, pp. 6-7).

Mason's first point—that evidence of his contemporaneous request for footage would have burnished his credibility to the jury—is sensible enough. That information would at least have been mildly relevant. *See* Fed. R. Evid. 401. But the jury *did* hear evidence regarding at least one of Mason's requests for footage of his encounter with Snell. Most notably, the report of the "Adjustment Committee," admitted into evidence as Exhibit 10, states that Mason believed footage from the cameras near his cell would reflect what happened. Mason's attorney raised the point again during his closing argument to the jury, emphasizing that his request for the footage was a reason they should believe Mason over Snell. (Presumably, these references were what prompted jurors to ask counsel about the video footage in the first place.) Mason does not explain why yet more evidence on this point would have made a difference, and the Court does not see how it could have affected the outcome.

Mason's second proposed use for the evidence—to resolve whether his account of his encounter with Snell was accurate—is straight-forward. It is often the case that video footage will conclusively resolve factual disputes. *See Scott v. Harris*, 550 U.S. 372, 380

(2007). The problem is that *there is no footage* here to show the jury. Non-existent evidence quite obviously could not have affected the outcome of trial.

Mason's final explanation for the evidence's import is that the jury "was entitled to consider . . . what it meant that the entity with custody of potentially corroborating evidence allowed it to be overwritten." (Doc. 225, p. 7). Reading between the lines, it seems Mason wanted the jury to consider the possibility that IDOC neglected to preserve the footage because it corroborated his account of his interaction with Snell. Yet in its pre-trial order, the Court expressed concern about using evidence regarding the non-preservation of the footage that way, noting that it "could confuse the jury or prejudice Snell by conflating his role in the events at issue with questions of video preservation or spoliation, which seem to have been the responsibility of officials other than Snell." (Doc. 208, p. 3). It is true that some courts have held that similar evidence is not necessarily barred by Rule 403 as unduly prejudicial or confusing. *E.g.*, *Schroeder v. City of Waukesha*, No. 13-CV-696-JPS, 2014 WL 1663531, at *2 (E.D. Wis. Apr. 25, 2014); *Pursell v. HydroChem, LLC*, No. 3:20-CV-01188-MAB, 2023 WL 2967274, at *2 (S.D. Ill. Apr. 17, 2023). But this Court was entitled to come to its own conclusion on the issue. Critically, as the Court emphasized in its prior order, Mason failed to identify evidence that "Snell (1) was aware Mason had requested the footage, (2) was responsible for saving the footage, or (3) had access to the footage himself." (Doc. 208, p. 2). In *Schroeder*, by contrast, the court found that the loss of the video footage occurred in "highly suspicious" circumstances. *See* 2014 WL 1663531, at *2.

Even if there were reasons to think counsel should have had more leeway to explore IDOC's motivations for failing to preserve the footage, there is little reason to think a new trial is required. As Mason acknowledges, the evidence only could have been used to bolster his credibility and even then, only obliquely. At a minimum, the jury would have been required to believe (1) footage existed that clearly depicted Mason and Snell's interaction, (2) that an unnamed IDOC official saw or knew of the footage, (3) that official understood its connection to Mason's disciplinary tickets and grievances, and (4) that official decided either to delete the footage or allow it to be overwritten. Mason, for his part, has not pointed to evidence supporting any of the links of this logic chain. And if he had attempted to get into the issue at trial by calling Major Shaun Gee, the relevant IDOC administrative witness he identified, Gee would almost certainly have repeated the point that he made during his deposition: that IDOC officials would have taken action to preserve the footage had they known it was needed for a lawsuit. (Shaun Gee dep., Doc. 201-2, p. 10). Merely demonstrating that IDOC acted negligently or incompetently in failing to preserve the footage would give the factfinder little indication about the contents of the footage and thus do little to support Mason's credibility. This is all to say that it is unlikely a reasonable jury would be swayed by this use of the evidence.

Again, it is not the case that Mason was deprived of any opportunity to corroborate his account by referring to the footage. As discussed above, the jury *did know* that he requested the footage and heard argument on that point. But there is little chance more information about the non-preservation of the video would have affected the

outcome of trial, particularly given the additional limiting instructions that might have been necessary.

* * *

Also before the Court is a Bill of Costs filed by Defendant Snell and other defendants employed by IDOC who were dismissed from the case earlier in the litigation (Doc. 226). Collectively, they seek $5,452.45 for costs associated with deposition transcripts. Mason filed a timely objection. (Doc. 326). He asserts that Defendants' request was not timely filed and that he is unable to afford the sum requested. Defendants did not respond to the objection.

Federal Rule of Civil Procedure 54(d)(1) provides that "costs—other than attorney's fees—should be allowed to the prevailing party" unless a federal statute, the Federal Rules of Civil Procedure, or a court order provides otherwise. "The rule provides a presumption that the losing party will pay costs but grants the court discretion to direct otherwise." *Rivera v. City of Chicago*, 469 F.3d 631, 634 (7th Cir. 2006).

The local rules of this district require that requests for costs be filed "no later than 30 days after the entry of judgment." SDIL-LR 54.2(c). The rules also state, in mandatory language, that late-filed requests "shall be stricken by the Court." *Id.* The Court entered judgment in this case on July 14, 2026. A request for costs therefore was due by August 13, 2026. Defendants did not file their request until August 14, 2026, the day after the deadline. Although Defendants only missed the deadline by a day, the deadline is the deadline, and they offer no explanation for their delay. The Court therefore will deny Defendants' request for costs as untimely. *See Johnson v. Jeffreys*, No. 3:21-CV-779-NJR,

2026 WL 555451, at *2 (S.D. Ill. Feb. 27, 2026) (citing *Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co.*, 854 F.2d 219, 222 (7th Cir. 1988)).[*]

## CONCLUSION

The Court is grateful to Mason's attorneys for assisting him in this matter *pro bono*. After reviewing the entire record, the Court remains convinced that Mason received a fair trial, in no small part thanks to their commendable performance throughout the litigation. Accordingly, Mason's motion for a new trial (Doc. 225) is **DENIED**. However, Mason's objection to the Bill of Costs filed by the IDOC defendants (Doc. 229) is **SUSTAINED**. Defendants' Bill of Costs (Doc. 226) is **DENIED.**

**IT IS SO ORDERED.**

**DATED: October 22, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**

[*] The Court declines to make a finding that Mason is unable to pay the sum requested given the limited information in the record about the funds available in his prison account and the size of his settlement with Wexford Health Sources, Inc. (Doc. 200).